## SEVERNS v. ENGLISH. SAME v. BROE et al.

No. 6438—Opinion Filed July 25, 1916.

On Rehearing, Jan. 30, 1917.

(159 Pac. 917; 163 Pac. 526.)

(Syllabus by Burford, C.)

### 1. Contract—Construction.

Where S., H. and B. enter into a contract for the payment to B. of the "proceeds" of an earlier contract between S. and H. alone, and the term "proceeds" is not defined in the contract of S., H. and B., it is proper to turn to the contract between S. and H., with knowledge of the terms of which all parties contracted, to ascertain the true definition of the "proceeds" agreed to be paid to B.

### 2. Appeal and Error—Law of Case.

Where, upon a former appeal, the right of a receiver, under the pleadings as filed, to the possession of certain property is sustained, upon a final hearing, under the same pleadings, such decision is the law of the case, and, if the proof reasonably tends to support the allegations of the petition, a judgment of the trial court adjudging possession of such property to the receiver will not be disturbed, since it is not subject to attack upon questions of law involved in the former appeal.

### 3. Judgment—Conformity to Issues—Ancillary Suits.

That part of a judgment in an ancillary suit brought by a receiver solely to obtain possession of certain property, which appoints the receiver permanent custodian of the property, is beyond the issue and will be set aside, the extent of the power of the receiver being properly justiciable in the main action in which he was appointed.

Error from District Court, Comanche County; James R. Tolbert, Assigned Judge.

Action by Armeline F. Broe, administratrix, and Arnold F. Broe, administrator, of the estate of George W. Broe, deceased, against J. O. Severns, consolidated with an action by F. M. English, receiver. From a judgment for plaintiffs, defendant appeals. On rehearing, modified and affirmed.

See, also, 19 Okla. 567, 101 Pac. 750.

W. C. Stevens and H. B. Hopps, for plaintiff in error.

B. M. Parmenter, for defendants in error.

Opinion by BURFORD, C. The cases before us for consideration are the result of a long-continued and varied litigation. It appears that J. O. Severns, the plaintiff in error, bid for and received from the Secretary of the Interior a certain contract for the install-ing of a sewer system in the city of Lawton. The digging of the ditches therefor was sublet by Severns to one John R. Hale, under a written contract between Hale as first party and Severns as second party, which was dated August 29, 1904. This contract provided that Hale was to dig and backfill the necessary ditches, amounting to 42,005 feet, for a flat price of 26 cents per lineal foot, to be paid 80 per cent. as the work was completed weekly by Hale, and the remaining 20 per cent. when the whole work was accepted and approved. The contract further provided:

"It is also hereby mutually agreed that if the said party of the first part shall delay said work unnecessarily and without the cause or excuse as herein defined, for five days, the said second party is and shall be at liberty to take charge of and complete, or engage others to take charge of and complete, said work, and in such case the said party of the first part obligates himself to pay the said party of the second part, on demand, all costs of doing and completing said work, which shall be in excess of the price at which it is hereby agreed that said first party shall do and perform and complete said work; and said first party further agrees to pay the said party of the second part, on demand, all costs and damages which shall be incurred and sustained by said party on account of his doing and completing the work so far as aforesaid not done and completed by the said party of the first part."

Before the commencement of the work it appears that both Severns and Hale were desirous that Hale should obtain an excavating machine known as a "Buckeye Ditcher" for use in the work. Hale, however, not being of sufficient financial responsibility to purchase the machine, which cost $5,000 and freight, procured Geo. W. Broe, a merchant of Lawton, to guarantee his notes for the purchase price. Before this was done, however, a certain written contract was entered into. Severns denied signing this contract, as hereinafter set out, but the finding of the trial court was against him on this point, and, there being evidence reasonably tending to support the finding, we are bound by it.

The material parts of the contract are as follows:

"Lawton, Okla., September 24, 1904.

"Articles of Agreement.

"This article of agreement made and entered into this 24 day of September, 1904, by and between George W. Broe, party of the first part, and John R. Hale and J. O. Severns, party of the second part, witnesseth:

"That whereas, the said John R. Hale has secured a contract from J. O. Severns to excavate 42,005 feet, more or less, and back fill in the same of all sewers, ditches and trenches

of the sanitary sewer system to be erected in the city of Lawton, by the said J. O. Severns, in accordance with the plans and specifications of the United States geological survey, said excavating and filling in to be performed by said John R. Hale in accordance with a certain agreement entered into by and between the said John R. Hale and J. O. Severns on the 29th day of August, 1904; and whereas, the said John R. Hale is desirous of purchasing one Buckeye Ditcher of the value of five thousand dollars (5,000) dollars: Now, therefore, Geo. W. Broe, party of the first part, for and in consideration of one-half interest in and to the said ditcher, hereby agrees to guarantee the payment of said ditcher in the sum of five thousand ($5,000) dollars to the company or person from whom said ditcher is purchased by the said John R Hale. It is hereby agreed that in consideration of the said Geo. W. Broe guaranteeing the payment of said ditcher as aforesaid, that the said John R. Hale, party of the second part, agrees to turn over all proceeds of the said Lawton sewer contract above referred to until said machine is paid for in the sum above set forth; and that it is hereby agreed that all the proceeds of said contract is to be retained by the said Geo. W. Broe until said machine is paid for. The said Geo. W. Broe agrees to pay to the said John R. Hale one-half of the net proceeds derived from said contract above mentioned, and the said Geo. W. Broe is to retain the other one-half of the net proceeds as part of the consideration for the services hereto mentioned. And the said J. O. Severns agrees to give and deliver over unto the party of the first part, all of the proceeds had, derived, and acquired under the contract entered into on the 29th day of August, 1904, by and between said John R. Hale and the said J. O. Severns.

"The said J. O. Severns is hereby directed and authorized by the said John R. Hale to deliver to the said Geo. W. Broe all the proceeds derived and growing out of said contract entered into by the said John R. Hale and J. O. Severns on the 29th day of August, 1904. And the said J. O. Severns hereby agrees to deliver to said Broe the proceeds of said contract as above set forth; and it is hereby further agreed that the said Geo. W. Broe is to remain and have an undivided one-half interest in and to said machine after the same is paid for as aforesaid. * * *

"In witness whereof the parties hereunto have set their hands and seals the day and year above set forth. G. W. Broe.
"J. R. Hale.
"J. O. Severns."

After the execution of this contract the ditcher was purchased, Broe guaranteeing the payment of Hale's note therefor. The ditcher was placed upon the work, and the proceeds of the contract, amounting to $613.50, were paid by Severns to Broe. This amount was expended by Broe for freight and expenses. Then trouble arose between Hale and Broe, and each sought possession or control of the ditcher. Severns ceased to pay anything to Broe, and Hale defaulted upon his contract with Severns. On January 14, 1905, Hale turned over the ditcher to Severns, against the wishes of Broe, and Severns used it to complete the contract. The expenditures by Severns to carry out the Hale contract from this time on were largely in excess of the 26 cents per lineal foot specified in the Severns-Hale contract. At the date the machine and other tools were turned over to Severns a written contract was entered between Hale and Severns reciting the delivery of the machine, and that Severns was to complete Hale's work and keep account of expenditures thereon and account to Hale for any excess of the contract price over the actual cost to Severns of completing the agreed work.

Broe now brought a suit against Hale known as No. 1010, in which he sought the appointment of a receiver for the machine and an accounting between Hale and himself. In this suit F. M. English was appointed and qualified as receiver. He thereupon instituted suit against Severns for the possession of the machine. This suit is known as No. 1046. The trial court ordered Severns to deliver the machine to the receiver or give a bond to retain it, and enjoined Severns from interfering with the possession of the receiver. Severns delivered the machine, but shortly gave the bond and took back the ditcher. From the order of the trial court just recited an appeal was taken to the Supreme Court of the territory, resulting in an affirmance of the order of the trial court. Severns v. English, 19 Okla. 567, 101 Pac 750. Meanwhile, Case No. 1010 was tried, resulting in a judgment for Broe against Hale, which, for some reason not appearing in the record, was remitted to $10. The judgment of the court, however, ordered the receivership continued until the further order of the court. This judgment became final. Broe now brought a suit called No. 1155 against Severns for a recovery of the amounts alleged to be due under the Hale-Broe-Severns contract. This suit and No. 1046—the receiver's suit for possession of the machine—were tried together before the court without a jury and the judgments in these cases are now before us for review. The trial court found judgment for Broe against Severns for $5,000, and for the receiver for possession of the ditcher, and ordered him continued as permanent receiver thereof.

It is contended that the money judgment in No. 1155 is not supported by any evidence. The rights of Broe are fixed under the Broe-Hale-Severns contract. By its terms Broe was to receive all the "proceeds" of the Hale-Severns contract of August 29, 1904. For a definition of these proceeds we must necessarily turn to the Hale-Severns contract, with reference to and with knowledge of which all

parties contracted in the Broe-Hale-Severns agreement. Under the Hale-Severns contract the "proceeds" were 20 cents per lineal foot, payable as therein specified, unless and except Hale should default for five days in the performance of the work, and Severns should take it over, in which case the "proceeds" would, as specified by the contract, be only the difference between the actual cost to Severns of doing Hale's work and 26 cents per lineal foot. We are of the opinion therefore that Severns was obligated to pay to Broe 26 cents per lineal foot in the installments provided in the contract up to January 14, 1905; but, it clearly appearing that Hale was delaying the work, we are of the opinion that Severns had the right on that date to take over the work, and thereafter to account to Broe only for the difference in the cost and the agreed price as above set out. This qualification, however, must be made: All that Severns paid prior to January 14, 1905, under the Hale-Severns contract—and there is no evidence that he ever paid anything upon any obligations to Hale not arising out of the construction of these sewer ditches—should have been paid to Broe. In other words, if Severns overpaid his obligation, still he was bound to pay all the proceeds of the contract, prior to January 14th, to Broe and not to Hale. It clearly appearing that the cost exceeded the contract price after January 14, 1905, we are limited to the period prior to that time to ascertain Broe's recovery, if any. It does not appear in the record how much ditch was dug prior to January 14, 1905. It does appear by Exhibit "O," that Severns paid Hale and Broe prior to that date $3,674.23. Of this amount but $613.53 was paid to Broe. Severns, therefore, diverted to Hale $3,060.70 which he had contracted to pay to Broe. It does not appear that any further recovery is justified by the record. We have carefully considered all the contentions of counsel in regard to the testimony and these contracts, though such contentions are not specifically noticed. The true result seems to us to be that above reached. It is strongly urged that Severns continued to pay Hale money after January 14, 1905, and that there was testimony to show that these payments were made under the original contract. We think the record fairly shows without contradiction that the checks were made in Hale's name, the proceeds went to the workmen and for expenses on the ditch, and that Hale had no beneficial use of the money, it being disbursed under Severn's direction. If this were true, Severns, under our construction of the contracts, could lawfully pay, after January 14th, under the original contract, the debts for labor and material accrued in doing the work which Hale had agreed to do.

As to the receivership matter, we conceive ourselves to be bound by the decision of this court in Severns v. English, 19 Okla. 567, 101 Pac. 750, supra, as the law of this case. It was there held, upon the very pleadings now before us, that the order of the trial court ordering the delivery of this machine to the receiver was lawful; as the testimony upon the trial reasonably supported the allegations of the petition, and the judgment of the trial court was for the receiver, we do not feel at liberty, if we so desired, to disturb it. That part of the judgment continuing the receivership permanently, however, was beyond the power of the court in this case. This was an ancillary proceeding for possession of this machine only. The continuance of the receivership was not involved. The receiver's further duties must be determined in cause No. 1010 and not in this proceeding. In cause No 1155 in the trial court, if the plaintiff shall, within 30 days, enter a remittitur in the trial court of his judgment to the sum of $3,060.70, with interest at 6 per cent. from January 14, 1905, and costs, and evidence the same by filing a certified copy thereof with the clerk of this court, this cause is affirmed, otherwise to be reversed and a new trial granted. In cause No. 1046 in the trial court the judgment for possession of the machine is affirmed. That part of the judgment fixing the further duties of the receiver and declaring a permanent receivership of the ditcher is set aside and reversed. The costs of the appeal to be equally divided.

---

On Rehearing—Opinion Filed Jan. 30, 1917.

HARDY, J. Plaintiff's recovery should be limited to 80 per cent. of the contract price of the work actually performed by Hale up to the time of his default, and from the sum of $3,060.70 paid by Severns to Hale, which the opinion holds that Broe is entitled to recover, should be deducted the sum of $800 that from the uncontradicted evidence appears to have been in excess of 80 per cent. of the work performed at the time of Hale's default.

There was no error in awarding interest. Section 2848, Rev. Laws 1910, allows the recovery of interest upon damages which are certain or capable of being made certain by calculation and the right to recover which is vested on a particular day. The amount which plaintiff was entitled to recover is determined by the amount which had accrued under Hale's contract, to wit, 80 per cent. of the contract price of the work performed, and the right to recover this amount vested as the work was completed weekly by Hale. The amount was easily capable of being made certain, and Severns knew as the payments were made to Hale that Broe was entitled to receive the amounts thereof, and, having paid them to Hale in the face of his written agreement to pay said amounts to Broe, ought not be heard to complain of the allowance of interest thereon.

The judgment in favor of plaintiff in cause known as No. 1155 is modified and reduced to $2,260.70, with interest thereon at 6 per cent. from January 14, 1905, and costs, and, as so modified, is affirmed. The opinion of the commission is in all other respects approved.

All the Justices concur.